## STATE OF OREGON,
*Respondent,*

*v.*

## KENNETH ODIORNE,
*Appellant.*

(82-349C, 82-350C, 82-352C, 82-353C, 82-354C;
CA A28609 (Control), A28610, A28611, A28612, A28613)
(Cases Consolidated)

683 P2d 1380

Stephen J. Williams, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

## ROSSMAN, J.

This case involves a Justice of the Peace who was convicted of four counts of forgery and one count of theft in connection with his official duties. He raises two assignments of error, the first contesting the legality of the special grand jury that indicted him, the second asserting that his *Miranda* rights were violated. We affirm.

We have examined both assignments of error and find that only the grand jury issue merits our attention. A grand jury was selected in Klamath County to serve from March 9 to May 10.[1] Near the end of the grand jury's term, the state sought a special grand jury to investigate the charges against defendant. A court employe met with six members of the sitting grand jury and asked them if they would be able and willing to extend their service as grand jurors for the purpose of the special grand jury. Four of the six said they were, and the other two were excused. To complete the grand jury, three substitute jurors were drawn by lot from the same petit jury panel[2] as the other four members. Those seven persons constituted the special grand jury involved here.

On October 19, 1982, the special grand jury, with six members present, issued six indictments against defendant. Shortly thereafter, the state dismissed the indictments because of a mistake. The grand jurors were called back on November 1. No additional evidence was presented on that date. The grand jury, with only five members present,[3] issued new indictments against defendant. The state did not file an order to recall the grand jury before November 1.

■■ Defendant makes a two-pronged argument against the grand jury: The first is that the selection process violated Article VII (Amended), section 5(2), of the Oregon Constitution, because the four carryovers from the regular grand jury were not chosen by lot. We are satisfied that the special grand jury in this case was chosen in a constitutionally permissible

---

[1] All events relevant to this appeal occurred in 1982.

[2] "Petit jury panel," as used here, refers to the pool of duly empaneled prospective circuit court jurors.

[3] Defendant does not allege that insufficient grand jurors were present when the indictments were issued on November 1.

manner. Article VII (Amended), section 5(2),[4] simply requires that each grand juror be drawn by lot from the whole jury panel; it does not require that all jurors be drawn at the same time. Every grand juror in this case was chosen by lot from the same petit jury panel; it happens that four of the members were drawn at a different time than were the three substitute jurors. Because defendant has failed to allege or show any irregularity in the original selection of the four carryovers, we hold that the grand jury selection in this case complied with Article VII (Amended), section 5(2).

■ In any event, even if the jury selection in this case was technically flawed, it does not warrant a reversal. In *State v. Gortmaker,* 295 Or 505, 521, 668 P2d 354 (1983), the court discussed the purpose of random jury selection:

> "* * * [T]he fundamental purpose of the law is to prevent discrimination, whether it be on account of race, color, religion, sex, national origin, or economic status. Where the procedural errors made by those in charge of selecting jurors do not raise the possibility of defeating this goal, a court should be hesitant to order the drastic remedy of the dismissal of indictments."

Defendant has not made any specific claims of prejudice, nor do we see any other reason the indictments should be dismissed. Accordingly, we conclude that the grand jury in this case was constitutionally selected. To hold otherwise would exalt form over substance. *State v. Gortmaker, supra,* 295 Or at 523.

The second prong of defendant's argument is that the present indictments against him are invalid, because the special grand jury's authority supposedly ended on October 19, when it returned the original indictments against him.[5] Defendant relies on the fact that there was no court order reconvening the grand jury when it met on November 1 and returned the present indictments.

---

[4] Article VII (Amended), section 5(2), of the Oregon Constitution, provides:

"A grand jury shall consist of seven jurors chosen by lot from the whole number of jurors in attendance at the court, five of whom must concur to find an indictment."

[5] As noted, this jury was empaneled in May. Thus, it had served during three different jury terms when it indicted defendant in November. Whether the jury was held over improperly is not raised as an issue.

We do not agree that this grand jury's authority ceased on October 19 or that it was necessary to select a new grand jury. There is nothing in the record to indicate that the grand jury was formally discharged between October 19 and November 1. Defendant is unable to cite any statutory authority for his contention and is evidently relying on some kind of *implied* discharge theory, based on the notion that the grand jury's business was forever over on October 19. Even if such a theory did exist in the law, we do not understand how it would apply here.

An examination of the trial court's order appointing the special grand jury indicates that it is "open-ended." It orders only that the grand jury be selected "forthwith," "for the purpose of receiving any evidence relating to the [investigation of defendant]," and that the motion and order for the appointment of the grand jury be sealed "pending completion of the Grand Jury Investigation or unless earlier ordered by the Court." No specific date is mentioned as the termination of the grand jury's authority. The rules for the judicial district provide for new circuit court jury terms every three months, commencing on the third Mondays of January, April, July and October.[6] Presumably, any grand jury sitting on October 19 would be validly sitting on the following November 1.[7] Therefore, we conclude that the jury was still authorized to act on November 1.

Affirmed.

---

[6] *See* Rules, 13th Judicial District, p 2 (1977).

[7] Defendant might have a valid argument had the grand jury not reconvened until the next term of court. ORS 132.120 provides:

"When the term of court is completed the grand jury must be discharged by the court; but the judge may, by an order made either in open court or at chambers anywhere in his district and entered in the journal, stating the reasons, continue the grand jury in session for such period of time as the judge deems advisable."

Thus, under the statute, the "hold-over" of a grand jury requires a court order, but the record does not disclose such an order. However, defendant does not raise any issue regarding the applicability of this statute.